2. The demandant then prayed the opinion of the court, that on the issues joined in this cause, she hath shown good title to recover her dower of the tract of land called *Wertimburgh*, in the declaration named; which opinion the county court refused to give. The demandant excepted; and the verdicts and judgment being for the defendant, she appealed to this court.

*Shaaff* and *Brooke*, for the appellant, cited 2 *Inst.* 286. 10 *Coke*, 117, *Pilford's* case.

*Taney* and *F. S. Key*, for the appellee.

THE COURT OF APPEALS *reversed* the judgment of the County Court, disagreeing with that court in the opinions expressed in both of the bills of exception.

PROCEDENDO AWARDED(*a*).

(*a*) Neither in this case, nor in that of *Keefer vs. Marker*, were any damages laid in the declaration. The case of *Keefer vs. Marker* was also an *appeal* from Frederick county court, in an action of *dower*. To the declaration there was a *general demurrer*, and joinder in demurrer, and the county court ruled the demurrer good, and gave judgment for the defendant; from which judgment the demandant appealed to this court. And at this term the court of appeals *reversed* the judgment, and entered a judgment for the demandant for dower and costs.

---

DANNISON *vs.* ROBINETT, *et al.*

APPEAL from a decree of the Court of Chancery, *dismissing* the bill of complaint of the present appellant. The bill states, that *William Smith*, one of the defendants, being seized in fee of a tract of land called *Sugar Tree Camp*, lying in *Washington* county, containing 100 acres, mortgaged the same to *James Bryant* in 1788, in consideration of his having paid debts for him to the amount of £39. That *Smith* had three sons, named *Christian*, *Philip* and *Peter*, (also defendants,) and he was indebted to *Christian* in the sum of £109 13 10, as ascertained by a settlement made between them on the 22d of May 1789. That he had no means to discharge the debt, except by a sale of his equity of redemption in the land. That it was agreed between the father and his sons that the former should sell to them the land, and a bond of conveyance was executed for the purpose dated the 22d of May 1789. And it was also agreed, that on the sons *Philip* and *Peter*, paying to

*1806.*
Dannison
vs
Robinett

DECEMBER.

Where a person, having the equitable interest in land, is in possession, yet if such interest is not known, it will not prevail, if established, over the legal estate commencing subsequent to the equitable interest

1806.
Dannison
vs.
Robinett

*Christian* two thirds of the debt due to him, they were equally to have the land.    From the time of the contract, to the year 1793, the three sons possessed the land. While they were in possession, *Moses Robinett*, (another defendant,) who had a knowledge of their equitable right, purchased the same land from *William Smith*, and obtained a deed, dated the 8th of October 1793. That *Peter*, one of the sons, was induced by *Robinett* to believe his title was invalid, and he contracted with him for the same for the sum of £15, for which a note was given, but the money has never been paid. That *Joshua Wilson* (another defendant,) paid to *James Bryant* the money due on the mortgage, and obtained an assignment of the same. That *Robinett*, having obtained the deed, applied to two magistrates for a writ of *forcible entry and detainer*, availing himself of a period when the sons could obtain no counsel, and they were induced to believe they would be turned out of possession, and therefore gave up the possession. That the magistrates who attended were those before whom the deed was executed, and one of them the agent of *Robinett*. That on the 29th of November 1793, *Joshua* and *Isaac Wilson*, (also defendants,) in consideration of $20 paid to *Christian Smith*, obtained an assignment of his interest in the bond of conveyance, and on the 19th of June 1794, for the like sum paid by *Dannison*, (the complainant,) reassigned the bond to him. That *Peter Smith*, on the 1st of March 1794, and *Philip Smith*, on the 18th of April 1794, assigned their interests in the bond to the complainant for the like consideration. That *Robinett*, after he obtained the deed, paid to *Joshua Wilson* the money he had paid on the mortgage, and received an assignment. That the complainant tendered to *Robinett* the principal and interest due on the mortgage, and tendered and claimed a conveyance, but that *Robinett* refused to receive the money, or execute the deed. The object of the bill was to obtain that conveyance, and for *Robinett* to account for the profits of the land from the time he took possession of it.

The *answers* of all the defendants, except *Robinett*, admit the facts stated in the bill. He *does not* admit the *debt* to the sons, nor the *bond of conveyance*, or *his knowledge of the same*, if it did exist, before the deed to himself.

The complainant offered in evidence sundry depositions of witnesses, taken under a commission issued from the Court of Chancery, to prove—1. The execution of the *bond of conveyance.* 2. The consideration, possession, and notice to *Robinett.* 3. The assignments executed by the three sons of *William Smith* to the complainant.

HANSON, Chancellor, (October term, 1803.) The answer of the principal defendant, who is called on to convey, &c. expressly denies knowledge of an equitable title in the persons under whom the complainant claims, and there is not testimony, which, according to the principles of this court, is sufficient to refute the answer, taking the whole of the testimony into consideration. *Decreed,* that the bill be *dismissed,* but without costs. From which decree the complainant appealed to this court.

The cause was argued in this court before CHASE, Ch. J. TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J.

*Johnson,* (Attorney-General,) for the appellant, contended—1. That a prior equitable right to land will prevail over a legal title acquired with a knowledge of that equitable right.

2. That where the person having the equitable interest is in possession of the land, there, although *in fact* his equitable interest *is not known,* still it will prevail, when established, over the legal estate commencing subsequent to the equitable interest. In other words, the possession alone will exclude the legal right from being protected, on the ground of being ignorant of the equitable right. He cited 2 *Fonbl.* 155, *(note* m). *Smith vs. Low,* 1 *Atk.* 490; and 1 *Pow. on Cont.* 302.

3. That the appellant may recover two thirds; that is, the proportions of *Christian* and *Philip,* supposing the conduct of *Peter* may exclude him, or his assignee, from the recovery of the other third.

4. That if *Peter,* at the time of the conveyance from *William Smith,* was ignorant of his right, and that *Robinett,* or his agent, contributed to induce him to the belief that he had no right, his one third may be recovered.

5. That the assignee of *Christian* alone is entitled to a conveyance of the whole land, until *Peter,* or his assignee, pays his portion of the debt.

**1806.**

**Worthington.**
**vs.**
**Bicknell**

6. That the appellant is entitled to an account of the profits to sink the mortgage debt. He referred to *Jarrett vs. West,* in this court.

*Shaaff,* for the appellees. A decree for a specific execution of a contract is not *ex debito justitiæ,* but at the discretion of the court. An agreement, to merit the interposition of a court of equity in its favour, must be fair, reasonable, *bona fide,* certain in all its parts, mutual, useful, made upon a good or valuable consideration, not merely voluntary, free from fraud, &c. 2 *Pow. on Cont.* 221. Unless a contract has all these ingredients, a court of equity will not decree a specific performance. The Chancellor decreed in this case, upon the ground that notice was not sufficiently proved. And in support of the decree dismissing the bill, it is contended—1. That there was no contract proved. 2. If there was a contract, it was a voluntary and fraudulent one. 3. The bill has not charged any thing like notice to *Robinett.* He referred to 1 *Pow. on Cont.* 302. *Butcher vs. Stapely,* 1 *Vern.* 365. *Borret vs. Gomeserra, Bunb. Rep.* 94. 2 *Eq. Ca. Ab.* 17, 48.

THE COURT OF APPEALS *affirmed* the decree of the Court of Chancery.

---

**DECEMBER.**

**WORTHINGTON,** *et al. vs.* **BICKNELL.**

A executed a mortgage to B. of real and personal property, to secure the payment APPEAL from a decree of the Court of Chancery. The bill, filed by the present appellees in 1801, stated that of a sum in the *then* current money, and it was afterwards agreed between them, that the personal property should be released, on A's endorsing on the mortgage that it was a *specie* debt. A afterwards conveyed his equity of redemption in the real estate to C, who, on the representations of B, of the sum due on the mortgage, and that it should not be released unless C executed to him his bond for that sum, did accordingly execute such bond; on which a suit at law was brought, and judgment rendered thereon. On a bill in chancery by C, an injunction was obtained to stay proceedings at law. The auditor was ordered to state the mortgage debt in continental money, reducing it into specie at 5 for 1, with interest, and credit the payments made; and on such statement it appeared that the debt was over paid. *Decreed,* that the injunction be perpetual.

Parol evidence admitted to prove, that a debt secured by a mortgage was continental money, altho' expressed to be a specie debt.

Where there is a mortgage, with a personal covenant by the mortgagor that he will pay the money, and he assigns his equity of redemption, is he a competent witness for the assignee to prove that the money loaned was continental money? *Quere.*

The assignee of a mortgage is entitled to the same relief that the mortgagor would have been entitled to against the mortgagee.

A decree in favour of the *complainant,* but *without costs,* was on appeal by the *defendant,* reversed as to costs, and affirmed as to the residue; and decreed that the complainant should recover his costs in both courts.